**IN THE COURT OF APPEALS OF IOWA**
No. 20-1473
Filed March 3, 2021

**IN THE INTEREST OF Z.I.,**
**Minor Child,**

**K.I., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon,
District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Gregory H. Stoebe, Humboldt, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

        Sarah Livingston of Thatcher and Livingston, P.L.C., Fort Dodge, attorney
and guardian ad litem for minor child.


        Considered by Doyle, P.J., Tabor, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her child, Z.I. She argues the juvenile court should have granted her an additional six months to work toward reunification.[1] We affirm.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We typically use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether

---

[1] The mother makes a passing reference challenging the statutory grounds authorizing termination and the juvenile court's determination that termination is in Z.I.'s best interest. But these arguments are not sufficiently developed for our review, so they are waived. *See In re A.D.*, No. 20-1192, 2020 WL 7022393, at *3 n.5 (Iowa Ct. App. Nov. 20, 2020); *In re W.N.*, No. 20-1099, 2020 WL 7021682, at *2 n.4 (Iowa Ct. App. Nov. 30, 2020); *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

Similarly, the mother attempts to challenge the State's reasonable-efforts mandate. However, parents must bring their complaints regarding reasonable efforts to the juvenile court's attention prior to the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal). Our review of the record on appeal reveals no instance where the mother requested additional services or claimed the services provided were inadequate. So the claim is waived.

a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge [any of the three] step[s] in our analysis, we need not address [them]." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Instead, we focus our attention on the claim sufficiently presented by the mother, whether the juvenile court should have given her an additional six months to work toward reunification.

The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b) (2020). In doing so, the juvenile court essentially must "predict what the future holds for [the mother]." *See In re A.M.*, No. 20-1378, 2021 WL 377103, at *3 (Iowa Ct. App. Feb. 3, 2021).

The mother points to her recent enrollment with Life Works services and argues she will learn the necessary life skills within six months' time to enable reunification. While we commend the mother for engaging in self-improvement efforts, we do not believe the mother will resolve her deficiencies within six months for several reasons.

First, the mother has a history of inconsistency. The mother was diagnosed with unspecified depressive disorder, borderline personality disorder, antisocial traits, and mild intellectual disability. Yet she has been inconsistent with mental-health therapy; at the time of the termination hearing, the mother had gone more than nine months without seeing her counselor. And the mother does not take her medication consistently. The mother is inconsistent with visitations. In the three months leading up to the termination hearing, the mother missed eight visits.[2] Of the six Safe Care appointments offered, the mother only attended one. The mother missed five appointments intended to get her started with Life Works, the organization she now argues will help her achieve reunification. During the course of this proceeding, the mother has failed to demonstrate the ability to consistently participate in the many reunification services offered to her. And we look to the mother's past performance to anticipate her future performance. *Cf. id.* ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))). So we do not believe she would consistently engage with Life Works to make any significant changes within six months.

Second, several issues stand in the way of reunification. As mentioned, the mother is not adequately addressing her mental-health issues. Her apartment building has bedbugs, creating a health concern. Her adaptive functioning is low, she has trouble learning new skills or verbalizing her needs, and she requires direct assistance when parenting. So she has not progressed past supervised

---

[2] The mother was offered two visits per week.

visitation. She tested positive for methamphetamine in August 2020, raising our concerns about her use of illegal substances in the future.[3] And it is unclear from the record how Life Works services would or could address our laundry list of concerns.[4]

Third, the mother is reticent to follow guidance and change her parenting skills. A social worker testified:

> [The mother] struggles to understand our concerns about the parenting piece. She does not seem to want to learn. She believes that she has everything under control. And with her not having the ability or wanting to make improvements, it would be a struggle for her to at least trust she's going to be able to [parent] on her own.

Given the mother's resistance to change, we do not believe she would make the numerus changes necessary within six months to enable reunification. We are unable to enumerate any factors, conditions, or expected behavioral changes demonstrating the need for removal of the child will no longer exist at the end of the additional six-month period. *See* Iowa Code § 232.104(2)(b). So we believe granting the mother an additional six months would only delay the inevitable and the mother's rights would be terminated.

---

[3] The mother claims she tested positive because she had hugged or touched someone who was positive for methamphetamine. We question the veracity of the mother's claim. But assuming it is true, we are concerned the mother is spending time with methamphetamine users.

[4] The record indicated Life Works helps clients with tasks such as budgeting, medication management, and daily schedules. But the record does not definitively state all of the services provided by Life Works.

Therefore, we agree with the juvenile court and conclude the mother should not be given an additional six months to work toward reunification, and we affirm the termination of the mother's parental rights to Z.I.

**AFFIRMED.**